UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

LIQUOR LLC d/b/a LIQUOR LAND,
A Michigan Corporation and ROMEL AL MANANI,
Owner and operator,

              Plaintiffs,

                            Case No. 26-cv-
                            Hon.
Vs.


UNITED STATES OF AMERICA,
Through the Food and Nutrition Service,
An agency of the UNITED STATES DEPARTMENT
OF AGRICULTURE,

              Defendant.

_____/

## COMPLAINT FOR JUDICIAL REVIEW OF FINAL AGENCY ACTION AND REQUEST FOR TEMPORARY STAY OF AGENCY ACTION PENDING DISP0SITION OF JUDICIAL REVIEW

NOW COMES Plaintiffs LIQUOR LLC d/b/a LIQUOR LAND,A

Michigan Corporation and ROMEL AL MANANI, by and through their

attorney, SANFORD A. SCHULMAN, and states in support of their

Complaint for Judicial Review and Stay of Final Agency Action Pending

Disposition of the above-captioned matter against Defendants United

1

States of America, United States Department of Agriculture Food and Nutrition Services, hereby state as follows:

## I.  INTRODUCTION

1.  This action is brought under 7 U.S.C. 2023 for a trial de novo of the final agency action of the United States Department of Agriculture ("USDA"), Food and Nutrition Service ("FNS") permanently disqualifying Plaintiff from participating in the Supplemental Nutrition Assistance Program ("SNAP").

2.  Plaintiffs also seek a temporary stay of the agency action pursuant to 7 U.S.C. 2023 (17).

## II  PARTIES

3.  Plaintiff LIQUOR LLC d/b/a LIQUOR LAND, is a Michigan with its headquarters and principal place of business located in the City of Detroit, Michigan and operates a produce and grocery market at 16233 Schoolcraft Street, Detroit, Michigan 48227.

4.  Plaintiff, ROMEL AL MANANII as the owner and operator is a Michigan Corporation.

5.   Defendant, The United States of America, United States Department of Agriculture ("USDA"), is a department of the United States of America, and the Food and Nutrition Service is an agency of the USDA.

2

### III. **JURISDICTION**

6.  This Coutt has jurisdiction over this matter pursuant to 7 U.S.C. 2023(a)(13), 5 U.S.C. §702, and 28 U.S.C. 1331.

7.  This Court is the appropriate venue, pursuant to 7 U.S.C. 2023(a)(13) and 28 U.S.C. §1402, because LIQUOR LLC d/b/a LIQUOR LAND resides, is engaged in business, and has its principal place of business in this district.

### IV **STANDARD OF REVIEW**

8.  Pursuant to 7 U.S.C. 2023(a)(15), this action shall be a trial de novo in which the Court "shall determine the validity of the questioned administrative action in issue."

### V. BACKGROUND

9.  The United States Department of Agriculture's Food and Nutrition Service administers the Supplemental Nutrition Assistance Program ("SNAP"), formerly known as the Food Stamp Program until Congress renamed it in the Food, Conservation, and Energy Act of 2008. Congress' stated goal for SNAP is to "safeguard the health and well-being of the Nation's population by raising levels of nutrition among low-income households." 7 U.S.C.2011.

10.  Consumer participants of SNAP must use their benefits "to purchase food from retail food stores that have been approved for participation in the supplemental nutrition assistance program." 7 U.S.C. 201 3(a). In addition, federal regulations prohibit participating SNAP retailers from accepting program benefits in exchange for cash. 7 C.F.R. 278.2(a). The term "trafficking" refers to a variety of conduct that violates SNAP, including buying or selling benefits "for cash or consideration other than eligible food." 7 C.F.R. 271.2. If the FNS regional office determines that a retailer who participates in SNAP has committed any act of trafficking, FNS can disqualify that retailer from participating in SNAP. 7 C.F.R. 278.6(e)(1)(i). Alternatively, FNS may impose a civil money penalty in lieu of disqualification if it "determines that a disqualification would cause hardship" to households receiving SNAP benefits, Id., of if "the firm timely submits to FNS substantial evidence which demonstrates that the firm had established and implemented an effective compliance policy and program to prevent violations of the Program. 7 C.F.C. 278.6(i).

11.  A disqualified retailer can seek administrative review of such action. 7 C.F.R. 279.2. Following administrative review, the aggrieved retailer can pursue judicial review in the appropriate United States

district court. 7 C.F.R. 279.7; 7 U.S.C. 2023(a)(13). During the pendency of judicial review, the complainant can apply to the district court for a stay of the administrative action. 7 U.S.C. 2023(a)(17).

12. In Michigan, SNAP uses an Electronic Benefit Transfer ("EBT") system, and consumer participants receive their SNAP benefits through an EBT card. These beneficiaries can then use their EBT cards to pay for eligible food purchases at authorized stores. The EBT card functions much like a debit card; the consumer swipes their card in a point-of-sale machine and then enters a personal identification number ("PIN"). Also, like a debit card transaction, the retailer does not have access to the card holder's PIN and has no need to record the card number itself. Instead, a host computer processes and stores all of the relevant information for each SNAP transaction.

VI. EXHAUSTION OF ADMINISTRATIVE REMEDIES

Plaintiff timely appealed the FNS Retailer Operations Division's ("ROD") decision to permanently disqualify Plaintiff from participating in SNAP.

13.  On February 18, 2026, Plaintiff received a copy of the Final Agency Decision of the U.S. Department of Agriculture, Food and Nutrition Service, denying Plaintiff's appeal and upholding ROD's determination disqualifying Plaintiff from participating in SNAP.

## VII. **FACTS**

14.  ROMEL AL MANANI has owned and operated LIQUOR LLC d/b/a LIQUOR LAND for approximately several years. Prior to December 10, 2025, Mr. Al MANANI was an authorized retail participant in SNAP.

15.  LIQUOR LAND is located in Detroit in a neighborhood that is imperiled by the socioeconomic difficulties of its residents.

16.  LIQUOR LAND is primarily a grocery store, selling various meats and chicken, but also sells nonfood items including BBQ skewers, plastic plates, charcoal and the like.

16.  On September 17. 2026 the U.S.D.A issued a Charging Letter, charging ROMEL AL MANANI and LIQUOR LLC d/b/a LIQUOR LAND with "trafficking" for alleged acceptance of SNAP benefits in exchange for cash in violation of Section 278.2(a).

17.  ROD based its charges on allegations that certain Electronic Benefit Transactions ("EBT") that occurred from were suggestive of

6

using SNAP benefits in exchange for providing customers with its cash equivalent.

18.  The Charging Letter failed to provide any specific allegations of misconduct alleges from the period of February, 2025 until July, 2025 "suspicious activity" and concluded that Plaintiff impermissibly accepted SNAP.

19.  The Charging Letter simply provides general allegation.

20.  No evidence of trafficking was ever provided to Plaintiff other than the list of alleged violations.

21, Plaintiff was given ten (10) days from receipt of the Charge Letter to provide information and an explanation as to why the charge of trafficking was incorrect.

22.  On December 19, 2025, Plaintiff served a response to Defendant's charge of trafficking. Plaintiff stated it has not engaged in trafficking, and have seen no evidence that any of the transactions cited in the original letter actually occurred. Plaintiff argued that for all the years in business Food Stamps redemptions by LIQOR LAND were only a small part of their sales. On February 13, 2019, ROD served a letter to Plaintiff stating that the violations cited in its charging letter had occurred.

23.  The store became an authorized SNAP retailer on June 5, 2021.  It serves a community in the western portion of Detroit where a significant percentage of households in the vicinity receive SNAP benefits.  The Store began accepting EBT to better serve the local community and to increase its attractiveness to SNAP customers.  SNAP customers have made up over the years a larger share of the store's total clientele and account for a significant portion of the store's gross revenue.

The store has a sole proprietor, Romel Al Manani, who employs approximately a half dozen employees.  If the store is disqualified from receiving SNAP benefits, not only will it be likely that employees of the store will be terminated but, perhaps more significantly, numerous residents who rely on the store's location and access will have to find other options which will place an undue burden on their families.

The store is open to the public every day of the week from 8 am until 10 pm and until 11 pm on the weekends.  There are two checkout areas in the store.  There are security cameras throughout the store.

The letter dated September 17, 2025 from the USDA alleges violations from the period of February, 2025 until July, 2025.

8

**I.  THE DECISION OF FNS AND THE DOCUMENTS PROVIDED BY THE USDA IN SUPPORT OF THEIR CHARGING LETTER AND ALLEGED SNAP VIOLATIONS DO NOT PROVIDE ANY DETAILS AS TO THE ALLEGED VIOLATIONS**

In the September 17, 2025 letter from the United States Department of Agriculture (USDA) was a printout of purported store transactions which seemingly notified the Store of potential SNAP violations.  The documents simply conclude that "[t]he transaction activity was identified as suspicious after evaluating a variety of sources, including an electronic analysis of your store's transactions, information collected as part of a store visit, information you submitted about your store and how it operates when you applied and/or were reauthorized to accept SNAP, and any other information FNS may have regarding your store."

There is, however, no indication whether an undercover USDA investigator made any visits to the Store to monitor the Store's compliance with SNAP regulations.  There is no indication whether any investigator interacted with any Store employees.  There is no indication whether any investigator discussed with any employees any fraudulent transactions or policies or procedures for SNAP benefits.  There is no indication whether any customers were interviewed or provided any

9

information regarding fraudulent transactions.  Further, there is no indication that any employee gave or attempted to give anyone cash or any items prohibited to any customers in exchange for EBT benefits.

In short, except for the data entries, there are no videos, witness statements, interviews or statements of any fraudulent transactions. Moreover, there is no indication that the owner was interviewed or any employees at the store or any customers.  There are also no reports over the years that the Store has been open and accepting SNAP benefits of any improper transactions.

Nevertheless, FNS issued a "charge letter" to the Store owner on September 17, 2025, charging the store with trafficking, as defined in Section 271.2 of the SNAP regulations.  Based on the information provided, the Store is unable to identify specific dates or time or details as it relates to any violations of the SNAP program. As such, the allegations should be dismissed.

23.  In the December 10, 2026 decision of the Food and Nutrition Service (FNS) there is no factual findings or supporting documents. There is not even a reference to any evidence, statements of witnesses or exhibits.  In short the decision is completely arbitrary and capricious. In addition, the decision denies the request to pay a Trafficking Civil

Money Penalty instead of being disqualified from SNAP without any basis, reasoning or justification and simply concludes that insufficient evidence was submitted to meet the required criteria under SNAP regulation.

**II.  THE DECISION TO PERMANENTLY DISQUALIFY THE STORE IS UNDULY SHARE CONSIDERING THE STORE HAS NEVER RECEIVED ANY PRIOR CITATIONS OF ANY KIND INCLUDING ANY VIOLATIONS OF THE SNAP PROGRAM.**

Prior to receiving the notice of possible violation of the SNAP program, the Store had never had any violations, warnings or admonishments.  There has been not a single claim of any violation of any local or state law including any violations of the SNAP program.  Mr. Manani, the owner of the Store, takes personal pride in his daily involvement with the store.  Nevertheless, it is possible that even under his watchful eye an employee may have taken it upon themselves to engage in prohibited conduct.  The allegations do not name any such employee  Moreover, there is no suggestion that Romel was himself in any misconduct or that he directed anyone or that he even knew if in fact such conduct was occurring.  Likewise there was no evidence presented that Mr. Manani somehow benefited from any alleged misconduct.

11

It is unclear whether any warning or contact was made with anyone at the store regarding SNAP compliance concerns.  There is no record of any such contact and the first notice was the written letter from the USDA. The Store has received awards, certificate and accolades from various agencies for their customer service, access to the public and otherwise compliance.

**III.  THE DECISION TO PERMANENTLY DISQUALIFY THE STORE IS UNDULY SHARE CONSIDERING THE STORE HAS IN PLACE PROCEDURES AND PRACTICES TO ENSURE EMPLOYEES ARE TRAINED TO ENSURE COMPLIANCE WITH THE SNAP PROGRAM**.

Since becoming an authorized SNAP retainer, ROMEL AL MANANI the owner of the Store has put into place SNAP compliance policies which the employees are required to know and maintain compliance.  Attached herein are the materials that are distributed to the employees who have any contact with patrons.  The materials are often displayed through the Store and admonish that the penalty for engaging in EBT trafficking is significant.  Mr. Manani discusses the policy with each of his employees. While the Store does not specifically utilize training certificates, Mr. Manani personally reviews the policies with each of his employees.

12

It should be noted that the individual who may have been involved in fraudulent activity based on the records supplied has since been discharged.   There is a computer system in place that ensures that only eligible items are obtained with the EBT.  Employees are updated with any changes to the SNAP rules.

**IV.  THE DECISION TO PERMANENTLY DISQUALIFY THE STORE IS UNDULY SHARE CONSIDERING THE STORE RENEWS ITS REQUEST FOR CONSIDERATION OF A CIVIL PENALTY AND MAINTAINS THAT THE REQUEST FOR CMP SHOULD BE DEEMED TIMELY.**

The Store does not contest that the charging letter is dated September 17, 2025 and that a request for consideration of a civil money penalty in lieu of a permanent disqualification was submitted on Monday September 29, 2025.  However, Mr. Al Manai did not actually receive the letter until Wednesday September 24, 2025.  Even assuming that the time commences from the date the letter is actually received and that it was "received" on September 17, 2025 and that 10 days would September 27th or September 28th, those deadline days were weekends (Saturday and Sunday) and the next business day was September 29, 2025, the date and time the request for CMP was made.

13

Counsel informed the USDA that the Store five days prior to September 29, 2025, Romel Al Manani received notice from the US Department of Agriculture (USDA) Food and Nutrition Service (FNS) in the form of a letter charging LIQUOR LLC d/b/a Liquor Land with alleged violations of the Supplemental Nutrition Assistance Program (SNAP) and that an attorney represent ROMEL AL MANANI and LIQUOR LLC d/b/a Liquor Land/ LIQUOR LLC d/b/a Liquor Land and hereby requested consideration of a civil money penalty in lieu of a permanent disqualification for trafficking and the opportunity to submit to FNS information and evidence as specified in § 278.6(i), that establishes the firm's eligibility for a civil money penalty in lieu of a permanent disqualification in accordance with the criteria included in § 278.6(i).

**IV. THE DECISION TO PERMANENTLY DISQUALIFY THE STORE IS UNDULY SHARE CONSIDERING A SANCTION BARRING THE STORE FROM SNAP QUALIFATION WOULD BE AN UNDUE HARDSHIP ON THE STORE, ITS EMPLOYEES AND THE LOCAL COMMUNITY AND WOULD CONSTITUE AN ARBITRARY AND CAPRICIOUS SANCTION UNDER THE FACTS AND CIRCUMSTANCES.**

Given the fact that the Store has been in business without any prior issues or citations for years and that the imposition of a penalty disqualifying the Store from accepting SNAP benefits would have a significant detrimental impact on the Store, on Mr. Manani and his family

14

and on the numerous residents who rely on the Store to accept their SNAP benefits and provide them their necessary food items.

24.  On December 19, 2025, Plaintiff requested administrative review of the decision by ROD to permanently disqualify Plaintiff from participation in SNAP and on February 18, 2025 Plaintiff received a copy of the Final Agency Decision from the administrative review officer upholding the decision to permanently disqualify LIQUOR LLC dba LIQUOR LAND located at 16233 Schoolcraft St., Detroit, MI 48227 from participating in SNAP.

25.  Defendant did not consider the lack of evidence of any wrongdoing to justify a permanent suspension.

26.  Defendant's final decision was based on the Defendant's conclusion that evidence obtained all transactions cited in the letter of charges were conducted or supervised by a USDA Investigatory and are thoroughly documented, and a review of the documentation has yielded no indication of error or discrepancy in any of the reported findings. Defendant did not produce this "evidence" to Plaintiff at any time, and Plaintiff has still not seen them.

27.  The Final Agency Decision was made by Defendant's employees in Virginia who never visited the store, or spoke to any employees before the final decision was rendered.

28.  The Final Agency Decision disqualifying Plaintiff from SNAP will cause irreparable harm by among other things, damaging Al Ghadeer's business reputation and good will, resulting in a reduction of its customer base, a permanent loss of revenue and a loss to SNAP recipients in the community.

## VIII <u>REQUEST FOR JUDICIAL REVIEW</u>

29.  Plaintiffs re-allege and incorporates by reference paragraphs 1-33 above.Defendant's Final Agency Decision finding that LIQUOR LLC d/b/a LIQUOR LAND engaged in trafficking of SNAP benefits is invalid.

30.  Plaintiffs request a trial de novo in this Court on Defendant's charge of trafficking.

31. Plaintiff also requests that the Court stay the decision disqualifying Plaintiff from participating in Snap during the pendency of this action because Plaintiff is likely to prevail on the merits and a failure to grant the stay will cause irreparable injury.

WHEREFORE, Plaintiffs respectfully requests this Honorable Court stay Defendant's Final Agency Decision permanently disqualifying LIQUOR

16

LLC dba LIQUOR LAND from participating in SNAP; overturn Defendant's permanent disqualification of LIQUOR LLC dba LIQUOR LAND right to participate in SNAP, and all other relief just and proper in the premises.

<u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands that all issues be tried by a jury.

Respectfully submitted,

<u>/s/ Sanford A. Schulman</u>
Attorney for Plaintiffs
     LIQUOR LLC dba LIQUOR LAND
     And  ROMEL AL MANANI
500 Griswold Street, Suite 2340
Detroit, MI 48226
(313) 963-4740
Email:  saschulman@comcast.net

Date:  March 18, 2026